UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON E. SWANSON,

      Petitioner,

v.                                                                    Civil Case No. 04-74296
                                                                      Criminal Case No. 99-80890

UNITED STATES OF AMERICA,

      Respondent.                                  Honorable Patrick J. Duggan

_____/

### OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART PETITIONER'S
### MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE
### PURSUANT TO 28 U.S.C. § 2255

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on JUNE 21, 2005.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Jason E. Swanson ("Petitioner"), presently confined at the Federal Correctional Institution Gilmer in Glenville, West Virginia, seeks an order vacating setting aside, or correcting his sentence pursuant to 28 U.S.C. § 2255. In his *pro se* application, Petitioner, having been convicted of a felony, challenges his conviction under 18 U.S.C. § 922(g)(1) for knowingly possessing a firearm which had been transported in interstate commerce.

## I.    Background

Petitioner was charged with being a felon in possession of a firearm that was discovered

in the car that federal agents seized during the execution of an arrest warrant for Daniel Rick. Federal agents suspected Rick of trafficking illegal firearms and Rick had been seen driving the car, registered to Petitioner's mother.

On February 26, 1998, Petitioner drove Rick to the tattoo parlor where they worked. Federal agents entered the tattoo shop and arrested Rick. The agents questioned the other individuals in the tattoo shop. A federal agent approached Petitioner, advised him that he was not under arrest and did not have to speak with him. Petitioner told the agent that the car belonged to him. When the agent asked Petitioner whether there were guns or drugs in the car, Petitioner responded, "I don't mess with drugs. Drugs are for niggers." The agent again asked whether there were guns in the car and Petitioner replied that he did not want to answer the question. When the agent asked for consent to search the car, Petitioner did not consent but said, "If I talk to you I'm screwed."

The agents seized the car and found a handgun. On May 10, 2000, a federal grand jury returned a one-count indictment against Petitioner charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Before the trial, Petitioner's trial counsel filed motions to suppress the comments Petitioner made to the federal agent and the weapon found in Petitioner's car. This Court denied both motions.

At the jury trial, Petitioner's comment and the weapon found in his car were introduced and admitted into evidence without objection. On November 21, 2000, the jury found Petitioner guilty as charged.

At sentencing, this Court heard numerous objections by Petitioner to the presentence

investigation report and reduced Petitioner's applicable sentencing guideline range by seven offense levels, reducing his guidelines from a potential range of 151-188 months to a range of 77-96 months. The government then requested that the Court sentence Petitioner above the 96-month cap. Petitioner's trial counsel asked that defendant be sentenced to a term of 77 months. On June 20, 2001, the Court sentenced Petitioner to 90 months imprisonment.

Petitioner appealed his conviction challenging the Court's denial of his motions to suppress. The Sixth Circuit concluded that Petitioner's motions were properly denied and affirmed his conviction. *United States v. Swanson*, 341 F.3d 524, 533 (6th Cir. 2003).

On November 3, 2004, Petitioner filed a petition asking the Court to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.

## II.   Standard of Review

Section 2255 states, in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is  otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

The petitioner bears the burden of establishing any claim asserted in his § 2255 motion. To warrant relief because of constitutional error, the petitioner must show that the error was one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *See Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1962).  To warrant relief for a nonconstitutional error, the petitioner must show a fundamental defect

3

in the proceedings which inherently results in a complete miscarriage of justice.  *Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994).

## III.  Analysis

Petitioner's claims can be divided into two categories: nonconstitutional claims of error and ineffective assistance of counsel claims.

### A. Nonconstitutional Claims of Error

Petitioner argues that his sentence should be set aside or vacated because: (1) the Court erroneously adopted the Probation Department's inaccurate findings during sentencing; (2) the Court erroneously allowed inflammatory racial comments and evidence to be introduced at trial; and (3) the prosecutor engaged in actionable misconduct.  However, because Petitioner did not raise these claims at trial or on direct appeal, Petitioner is barred from raising these claims independent of his "ineffective assistance of counsel" claims.

"[N]onconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process."  *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  If a claim is not raised during the course of criminal proceedings or on direct appeal, a petitioner is procedurally barred from raising the claim in a § 2255 proceeding unless the petitioner "can show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594 (1982).  With regard to prejudice, procedurally defaulted claims of nonconstitutional error can be raised for the first time on collateral review only where the alleged error constitutes a "fundamental defect which inherently results in a complete

4

miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994). Consequently, "nonconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver." *Grant*, 72 F.3d at 506.

In this case, Petitioner has failed to establish cause and prejudice in support of his claims for collateral review. Here, none of Petitioner's nonconstitutional claims present either a "fundamental defect which inherently results in a complete miscarriage of justice," or an error "akin to denial of due process." However, because Petitioner alleges ineffective assistance of his appellate counsel, relief under § 2255 is available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

### B. Ineffective Assistance of Counsel Claims

"As all Federal Courts of Appeals have now held, the proper standard for attorney performance is reasonably effective assistance of counsel." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In his § 2255 motion, Petitioner argues that his sentence should be set aside or vacated because his Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to object when: (1) the Court departed from the Sixth Circuit Pattern Jury Instructions; (2) the Court failed to instruct the jury regarding "specific intent" as an element of the offense; (3) the Court erroneously adopted the probation department's findings regarding Petitioner's criminal history; (4) the Court allowed a racist comment attributed to Petitioner to be introduced at trial; and (5) the prosecutor engaged in actionable misconduct. Furthermore, Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated when appellate counsel failed to advance all of the

5

constitutional violations in Petitioner's direct appeal.

1.  Strickland Standard

A claim of ineffective assistance of counsel is judged under a two-part test.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  First, the petitioner must show that counsel's performance was deficient by showing that it fell below an objective standard of reasonableness according to prevailing norms of the legal profession.  *Id.* at 690, 104 S. Ct. at 2066.  Counsel's performance is deficient if it falls "outside the wide range of professionally competent assistance." *Id.*  However, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  Second, the petitioner must show that counsel's performance prejudiced the defense.  *Id.* at 687, 104 S. Ct. at 2064.  Counsel's deficiency results in prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

2.  Ineffective Assistance of Trial Counsel

First, Petitioner contends that trial counsel should have objected when the Court departed from Sixth Circuit Pattern Jury Instructions.  (Mot. at 4).  In this case, however, the instructions the Court presented to the jury were a set of jointly proposed jury instructions.  (Nov. 21, 2000 Trial TR at 33-34).  Moreover, Petitioner has failed to show how the departure from the pattern jury instructions was deficient or in any way prejudiced the defense.

Second, Petitioner contends that trial counsel failed to object to the Court's instruction

6

which omitted "specific intent" as an element of the offense.  (Mot. at 4).  Petitioner was convicted under 18 U.S.C. § 922(g)(1) for *knowingly* possessing a firearm which had been transported in interstate commerce.  "A specific intent crime is one that requires a defendant to do more than knowingly act in violation of the law.  The defendant must also act with the purpose of violating the law.  The violation of a general intent statute, by contrast, requires only that a defendant 'intend to do the act the law proscribes.'" *United States v. Gonyea*, 140 F.3d 649, 653 (6th Cir. 1998) (citations omitted).  Specific intent is not an element of possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1); the crime requires only general intent.  *See United States v. Hatfield*, 815 F.2d 1068, 1072 (6th Cir. 1987).  Clearly, trial counsel's performance was not deficient in failing to object to the trial court's failure  to instruct the jury as to "specific intent" where the crime was one of general intent.

Third, Petitioner contends that trial counsel should have objected when the Court erroneously adopted the probation department's findings regarding Petitioner's criminal history.  (Mot. at 4, 8).  During sentencing, this Court adopted the probation department's findings of a criminal history category of IV.  (Sentencing TR at 49).  The probation department found, in part:

> As the defendant was under a criminal justice sentence of parole when he committed the instant offense, two points are added pursuant to 4A1.1(d). Additionally, as the defendant committed the instant offense less than two years after release from imprisonment, one point is added pursuant to § 4A1.1(e).

(Presentence Investigation Report at 10).  According to Petitioner, these three points were erroneously added, increasing Petitioner's criminal history category from III to IV.  A category III finding would have produced a sentencing range of 63-78 months.

7

Petitioner had two prior convictions: (1) attempted breaking and entering for which Petitioner was paroled on July 18, 1995 and discharged from parole on January 18, 1997, and (2) felonious assault for which Petitioner was paroled on July 18, 1995 and discharged from parole on January 18, 1997. (*See* Presentence Investigation Report at 9-10). The incident leading to Petitioner's conviction under 18 U.S.C. § 922(g)(1) occurred on February 26, 1998. Therefore, Petitioner's criminal history category should have been III (6 points), not IV (9 points).

Petitioner's trial counsel, after reviewing the Presentence Investigation Report, should have noticed that Petitioner was assigned the wrong criminal history category. In addition, as Petitioner points out, the Supreme Court has found that attorney errors resulting in increased prison time can constitute prejudice. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S. Ct. 696, 700 (2001) ("[O]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.").

At sentencing, although trial counsel successfully lowered Petitioner's guideline by seven offense levels, reducing his guidelines from a potential 151-188 months, to 77-96 months and then requested that Petitioner be sentenced to a term of 77 months, trial counsel did not object to the erroneous criminal history category. Therefore, Petitioner's request for resentencing shall be granted.[1]

---

[1] The Assistant U.S. Attorney has argued that despite the fact that the Court may have relied on incorrect information and thus used an incorrect criminal history to determine the appropriate guideline range, there is no prejudice to Petitioner in light of *United States v. Booker*, 125 S. Ct. 738 (2005). (Govt.'s Br. at 18 n.2). In every other brief submitted to this Court, the Government has argued that *Booker* cannot be applied retroactively in making a determination as to whether a sentence imposed before *Booker* is appropriate. In this case, the Assistant U.S. Attorney seems to be arguing that the Court can and should consider *Booker* to

Fourth, Petitioner contends that trial counsel should have objected when the Court allowed inflammatory racial and political comments to be introduced at trial, specifically, Petitioner's statement to the federal agent "I don't mess with drugs. Drugs are for niggers." (Mot. at 12, 14). Before trial, Petitioner's counsel sought to have this statement excluded by filing a motion to suppress. This motion, however, was based on Defendant's contention that the statement was made while he was in custody and before he had received his *Miranda* warning. The Court denied this motion and the Court of Appeals for the Sixth Circuit upheld the ruling. *See United States v. Swanson*, 341 F.3d 524, 531 (6th Cir. 2003). At the time of trial, Agent William Fleming was asked by the Assistant U.S. Attorney about statements Petitioner may have made. Petitioner acknowledges that, "Fleming then said he asked me if there were any drugs or guns in the car. . . . Fleming said my response was, 'I don't do drugs. Drugs are for niggers.'" (Mot. at 18). Petitioner acknowledges that his attorney did not object to the question or answer.

In this Court's opinion, the question was proper and Petitioner does not claim that the testimony of Agent Fleming was inaccurate with respect to Petitioner's answer. Petitioner's answer to the question may have suggested to Agent Fleming that Petitioner was not denying that there was a gun or guns in the car. Moreover, such answer may have permitted the jury to conclude that Petitioner's failure to deny the fact that there was a gun or guns in the car

---

determine whether Petitioner's sentence, imposed before *Booker*, is an appropriate sentence. Therefore, it appears that where the Government believes that if a *Booker* analysis were to be applied to a *pre-Booker* sentence, it would favor the petitioner, the Government's position is that *Booker* should not be considered. However, where a *Booker* analysis would favor the Government, then the Government believes that the Court can consider *Booker*. This Court is troubled by the Government's inconsistent position.

may indicate that Petitioner knew a gun was present.  Petitioner's counsel was not ineffective for failing to object to this line of questioning because it was not unreasonable for him to believe that such an objection would not be sustained by the Court.  *See, e.g.*, *Cobb v. Perini*, 832 F.2d 342, 347 (6th Cir. 1987) (concluding that an attorney's performance was not deficient under the first part of the *Strickland* analysis where it was not clear that any objection made by the attorney would have been sustained).  In fact, it is unlikely that the Court would have sustained an objection because, although a portion of his answer contained an undesirable racial slur, nevertheless, that was Petitioner's answer.  In this Court's view, the question and answer were much more probative than prejudicial.  In any event, even if the Court concluded that somehow counsel was less than effective for failing to object to the question and answer, there is, in this Court's opinion, no reasonable probability that had the Court sustained the objection and precluded the "racial" portion of the answer that "the result of the proceeding would have been different."  *Stickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Fifth, Petitioner contends that trial counsel should have objected when the prosecutor engaged in prosecutorial misconduct by: (1) placing inflammatory racial and political evidence before the jury; (2) "vouching" for a witness; and (3) misstating evidence during his closing argument. (Mot. at 18).  The Prosecutor introduced CDs, along with the weapon found in Petitioner's car, into evidence to show that all of the objects found in Petitioner's car on February 26, 1998 belonged to Petitioner, rather than to Rick.  Although the CD inserts included racist song titles,  photographs, and lyrics, Petitioner's trial counsel did not object to the introduction of these CDs at trial.  However, the Court does not believe that but for the admission of these CDs, "the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

In addition, Petitioner contends that the prosecutor "vouched" for the testimony of a witness who testified that he had given Petitioner the gun later found in Petitioner's car when the prosecutor said, "But [the witness] was made to come in and testify. Put on the stand and tell us what happened, tell us the truth. And he did." (Nov. 21, 2000 Trial TR). "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). A prosecutor improperly vouches for a witness through direct statements, such as "I think the witness is honest," or through comments that imply that the prosecutor has special knowledge about the truthfulness of a witness. *Id.* (citations omitted). In this case, the prosecutor was not vouching for the witness; rather, he was merely paraphrasing the oath each witness must take before testifying on the stand and, in effect, was expressing his belief that such testimony was accurate with respect to the facts in this case. Thus, the Court does not believe that trial counsel was unreasonable for failing to object when the prosecutor made this statement during closing argument.

Finally, Petitioner contends that the prosecutor misstated evidence during his closing argument by classifying the witness who allegedly gave Petitioner the gun as an "eye witness" and by claiming that there was no fingerprint evidence needed. (Mot. at 39). A prosecutor's statement in closing argument is improper if the statement argues facts which are not in evidence and are prejudicial. *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995).

11

In this case, Petitioner argues that the witness who gave him the gun was not an "eye witness." However, the witness's testimony revealed that he saw Petitioner in possession of a firearm. Thus, classifying him as an "eye witness" was not misstating evidence. In addition, Petitioner contends that fingerprint evidence was taken from the gun, but did not reveal Petitioner's prints. The prosecutor did not state that no fingerprint evidence was taken; rather, he stated that it was not needed: "You also heard the defense talk about fingerprints. Again, don't be misled. There was no fingerprint evidence introduced in this case, but it wasn't necessary." Because the Court does not believe that the prosecutor argued facts which were not in evidence, trial counsel's performance was not deficient for failing to object during the prosecutor's closing argument.

3. Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel was ineffective in his failure to advance the issues set out above. In *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308 (1983), the Supreme Court held that an appellate counsel who filed a merits brief need not raise every nonfrivolous claim, but rather, should select from among them in order to maximize the likelihood of success on appeal. *Id.* at 751, 103 S. Ct. at 3312. "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Id.* at 752, 103 S. Ct. at 3313. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

In this case, appellate counsel argued on appeal that the district court erred in failing

12

to suppress two pieces of evidence: (1) the firearm, because it was the fruit of an unlawful seizure of his automobile; and (2) statements attributed to Petitioner, because they were elicited in violation of the *Miranda* rule.  Petitioner contends, and a letter dated July 15, 2002 from Petitioner's counsel addressed to Petitioner confirms, that Petitioner informed his appellate counsel that the wrong criminal history category had been used in determining his sentence.  However, appellate counsel did not raise this issue on direct appeal.

Here, the Court believes that the sentencing error was a strong argument, which appellate counsel should have presented to the appellate court.  Therefore, in this Court's opinion, appellate counsel's failure to raise the sentencing error on appeal constitutes ineffective assistance of counsel in violation of the Sixth Amendment.

Accordingly, for the reasons set forth above,

**IT IS ORDERED** that Petitioner's motion to vacate his sentence based on an incorrect criminal history is **GRANTED** and Petitioner shall be granted a new sentencing hearing.

**IT IS FURTHER ORDERED** that Petitioner's motion to vacate, set aside, or correct his sentence based on the other grounds set forth in his motion is **DENIED**.


_____
s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Jason E. Swanson
No. 28128-039
P.O. Box 8000
Glenville, WV 28351

Carl D. Gilmer-Hill, AUSA